UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE

LA BAMBA LICENSING, LLC                                              PLAINTIFF

v.                                                    CIVIL ACTION NO. 3:16-cv-00527-CRS

LA BAMBA AUTHENTIC MEXICAN
CUISINE, INC.                                                        DEFENDANT

# MEMORANDUM OPINION

This matter is before the court on motion of Plaintiff, La Bamba Licensing, LLC ("Plaintiff"), for summary judgment. For the following reasons, the court will **GRANT** Plaintiff's motion.

## I.  BACKGROUND

Plaintiff La Bamba Licensing, LLC operates a series of restaurants under the name "La Bamba" ("Plaintiff's restaurant" or "La Bamba") serving casual, Mexican-style cuisine. (DN 27, Exh. A, ¶ 9.) There are currently eight La Bamba restaurants located throughout Illinois, Kentucky, Indiana, and Wisconsin. (*Id*. at ¶ 8.) In years past, La Bamba locations also have existed in Ohio, Michigan, Pennsylvania, Nebraska, and Georgia. (*Id*. at ¶ 7-8.) One of La Bamba's current locations is in the Highlands neighborhood of Louisville, Kentucky, conveniently located next to many popular bars. (*Id*. at ¶ 13.) This location has been serving the Louisville market under the name La Bamba since early 1997. (*Id*. at ¶¶ 12, 15.)

In 1996, Ramiro Aguas, the founder and current president of Plaintiff, filed a trademark application for the LA BAMBA mark ("mark" or "LA BAMBA mark") with the U.S. Patent and

Trademark Office.[1] (*Id*. at 20-21.) The mark was registered in 1998 and covers "restaurant, café, carry out restaurant and catering services."[2] (*Id*.) Plaintiff also owns registrations for logos that contain the LA BAMBA mark as well as a registration for the LA BAMBA mark covering various food items.[3] (*Id*. at 22.) Each of these marks has become incontestable under 15 U.S.C. § 1065.[4] (*Id*. at 23.)

Defendant, La Bamba Authentic Mexican Cuisine, Inc. ("Defendant"), opened a restaurant in December of 2015 under the name "La Bamba Authentic Mexican Cuisine" ("Defendant's restaurant"). (DN 23, 1-2.) Defendant's restaurant has only one location in Lebanon, Kentucky, which is approximately sixty-five miles from Plaintiff's restaurant in Louisville. (*Id*.) Defendant's restaurant also serves casual, Mexican-style cuisine. (DN 26, 2.)

On May 10, 2016, Plaintiff sent a letter to Defendant advising it of Plaintiff's trademark rights in the LA BAMBA mark and demanding that Defendant cease use of the mark, which Defendant refused. (DN 27, Exh. B, ¶¶ 4-5.) Plaintiff sent another letter to Defendant on June 24, 2016, asking again that it change its restaurant's name. (*Id*. at ¶ 6.) Defendant again refused this request. (*Id*. at ¶ 7.)

Plaintiff filed a Complaint in August of 2016 alleging three counts: (1) Trademark Infringement under 15 U.S.C. § 1114(1); (2) Unfair Competition under 15 U.S.C. § 1125(a); and (3) Common Law Unfair Competition under Kentucky Law. (DN 1.) Plaintiff now moves this court to enter summary judgment in its favor on each of its counts. (DN 27.)

---

[1] While the initial application was filed in the name of Ramiro Aguas, the registration was subsequently assigned to Plaintiff. (DN 27, Exh. A, ¶ 21.)
[2] U.S. Reg. No. 2,141,892.
[3] U.S. Reg. Nos. 3,598,169; 3,598,167; and 3,527,867.
[4] 15 U.S.C. § 1065 states, in part:
> …the right of the owner to use such registered mark in commerce for the goods or services on or in connection with which such registered mark has been in continuous use for five consecutive years subsequent to the date of such registration and is still in use in commerce, shall be incontestable…

## II.     STANDARD

A party moving for summary judgment must show that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a). The moving party bears the burden of demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Additionally, the Court must draw all factual inferences in favor of the nonmoving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). A genuine issue for trial exists when "there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Anderson v. Liberty Lobby*, 477 U.S. 242, 249 (1986). It is the burden of the nonmoving party to "direct the court's attention to those specific portions of the record upon which it seeks to rely to create a genuine issue of material fact." *In re Morris*, 260 F.3d 654, 655 (6th Cir. 2001).

## III.     DISCUSSION

### A. The Law

Plaintiff brings claims against Defendant under the Lanham Act[5] and Kentucky common law. The Lanham Act's purpose "is to protect the trademark holder's quasi-property interest in the mark and prevent consumer confusion about the actual source of goods using the mark." *Maker's Mark Distillery, Inc. v. Diageo N. Am., Inc.*, 703 F.Supp.2d 671, 687 (W.D. Ky. 2010) aff'd, 679 F.3d 410 (6th Cir. 2012).

Plaintiff's first claim is Trademark Infringement under Section 32 of the Lanham Act, which states that it is a violation for a person, without the consent of the registrant, to:

> (a) use in commerce any reproduction, counterfeit, copy, or colorable imitation of a registered mark in connection with the sale, offering for sale, distribution, or advertising of any goods or services on or in connection with which such use is likely to cause confusion, or to cause mistake, or to deceive…

---

[5] The Lanham Act is codified at 15 U.S.C. § 1051 et seq.

15 U.S.C. § 1114(1)(a). Plaintiff also brings a claim for Unfair Competition under Section 43(a) of the Lanham Act, which holds liable:

> (1) Any person who, on or in connection with any goods or services, or any container for goods, uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which--
>
> (A) is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person…

15 U.S.C. § 1125(a). Plaintiff's last claim is Unfair Competition arising under Kentucky common law.

The analysis for Lanham Act claims of trademark infringement and unfair competition is identical to the analysis for Kentucky common law claims of the same. *See Winchester Federal Savings Bank v. Winchester Bank, Inc.*, 359 F.Supp.2d 561, 564 (E.D. Ky. 2004); *See also Two Pesos, Inc. v. Taco Cabana, Inc.*, 505 U.S. 763, 780 (1992) ("Whether we call the violation infringement, unfair competition or false designation of origin, the test is identical."). Specifically, to prove trademark infringement and unfair competition, a plaintiff must show that: "(1) [it] held the trademarks, (2) [it] did not consent to [the defendant's] use of those marks and (3) [the defendant's] use of the marks was likely to cause confusion among relevant consumers." *Eat BBQ LLC v. Walters*, 47 F. Supp.3d 521, 528 (E.D. Ky. 2014); *See also Carson v. Here's Johnny Portable Toilets, Inc.*, 698 F.2d 831, 833 (6th Cir. 1983) ("Once the plaintiffs establish that the marks are valid and protectable, they must establish that the defendant's service mark is likely to cause confusion among consumers in the marketplace in order to prevail on all of the state and federal claims.").

Thus, the first issue before the court is the validity of the trademark in question. *See Maker's*, 703 F. Supp.2d at 683, aff'd, 679 F.3d 410 (6th Cir. 2012). A mark is presumed valid when it becomes "incontestable" under 15 U.S.C. § 1065. A defendant then has the burden of rebutting its validity. In the present case, there is no dispute that the LA BAMBA mark is incontestable under 15 U.S.C. § 1065. (DN 27, Exh. 4.) Because Defendant does not attempt to rebut the validity of the mark, the court finds that Plaintiff's mark is valid.

The next inquiry is whether Plaintiff consented to Defendant's use of the mark. There is likewise no dispute about this prong of inquiry; Defendant admits that Plaintiff sent it correspondence asking it to change its name. (DN 29, 1-2.) Therefore, the only issue on this motion is whether Defendant's use of the mark is likely to cause confusion.

"Whether there is a likelihood of confusion is a mixed question of fact and law." *Champions Golf Club, Inc. v. The Champions Golf Club, Inc.*, 78 F.3d 1111, 1116 (6th Cir. 1996) (citing *Wynn Oil Co. v. Thomas*, 839 F.2d 1183, 1186 (6th Cir. 1988)). The court first considers the "fact[s] supporting the likelihood of confusion" before turning to the legal question of "whether those foundational facts constitute a likelihood of confusion." *Id*. (internal citations omitted).

The court looks at eight factors when determining whether the facts support a likelihood of confusion: (1) strength of the plaintiff's mark; (2) relatedness of the goods; (3) similarity of the marks; (4) evidence of actual confusion; (5) marketing channels used; (6) likely degree of purchaser care; (7) defendant's intent in selecting the mark; and (8) likelihood of expansion of the product lines. *Frisch's Rests., Inc. v. Elby's Big Boy of Steubenville, Inc.*, 670 F.2d 642, 648 (6th Cir.), *cert. denied*, 459 U.S. 916 (1982). A plaintiff does not need to prevail on each of the abovementioned "Frisch's" factors in order to establish likelihood of confusion. *Daddy's Junky*

*Music Stores, Inc. v. Big Daddy's Family Music Center*, 109 F.3d 275, 280 (6th Cir. 1997). "These factors imply no mathematical precision, but are simply a guide to help determine whether confusion is likely… The ultimate question remains whether the relevant consumers are likely to believe that the products or services are affiliated in some way." *Id*. (citing *Homeowners Group, Inc. v. Home Marketing Specialists, Inc.*, 931 F.2d 1100, 1107 (6th Cir. 1991)).

The Court will consider the facts supporting each of the "Frisch's" factors in turn.

**B. The Factors**

***1. Strength of the LA BAMBA mark***

The strength of a trademark turns on the mark's distinctiveness. *Frisch's*, 759 F.2d at 1264 ("The more distinct a mark, the more likely is the confusion resulting from its infringement."). The strength of the mark may be "the result of its unique nature," the result of broad public recognition, or both. *Therma-Scan, Inc. v. Thermoscan, Inc.*, 295 F.3d 623, 631-32 (6th Cir. 2002).

Courts measure the unique nature of the mark by placing the mark in one of four categories: generic, descriptive, suggestive, or fanciful or arbitrary. *Daddy's*, 109 F.3d at 280. Fanciful and arbitrary marks are the "strongest and most distinctive" of the categories. *Id*. An arbitrary mark has "a significance recognized in everyday life, but the thing it normally signifies is unrelated to the product or service to which the mark is attached." *Id*. (citing *Champions*, 78 F.3d at 1117).

The LA BAMBA mark is an arbitrary mark. Plaintiff states that the term has some common usage in ordinary language (such as the term's association with a 1980's song and movie), but that the term "La Bamba" is unrelated to the restaurant services Plaintiff provides.

(DN 27, 9.) Defendant does not dispute this and the court agrees. The arbitrary nature of the mark is in Plaintiff's favor on this factor.

The court also considers the mark's public recognition in determining the strength of the mark. "[A]lthough inherent distinctiveness may provide powerful support for the strength of a mark, the full extent of that support nonetheless depends on the scope of commercial recognition." *Maker's Mark Distillery, Inc. v. Diageo North America, Inc.*, 679 F.3d 410, 419 (6th Cir. 2012).

Plaintiff claims that the mark has "commercial strength" because its restaurants have been using the LA BAMBA mark continuously for close to thirty years. (DN 27, Exh. A, ¶ 15.) It further claims that the mark is particularly strong in Kentucky where it has been used in connection with the Louisville restaurant for almost twenty years and in connection to a previous Lexington, Kentucky location. (*Id*. at ¶¶ 12, 14.) Plaintiff emphasizes that the Louisville restaurant is a popular location visited by customers throughout the state. (*Id*. at ¶ 13.) Plaintiff further argues that the continuous use of the mark regionally and in Kentucky supports strong recognition of the mark in connection with Mexican cuisine. The Defendant does not dispute these underlying facts. In fact, Defendant even seems to concede that the mark is commercially strong within the Louisville area ("Plaintiff's Mark Strength is not Strong *outside of Louisville Area*") (emphasis added). (DN 29, 5.)

Rather, Defendant argues that third party use of the mark has weakened the LA BAMBA mark. *See Daddy's*, 109 F.3d at 281 (explaining that numerous third-party registrations of identical or similar marks may undermine the strength of the mark). However, Defendant does not point to any evidence in the record of allegedly similar marks, and does not specify the number of, location of, or types of goods and services offered by these allegedly "numerous" but

undisclosed third-party users. The court cannot conclude, based on Defendant's unsupported assertion, that there exist third-party users of the mark that weaken LA BAMBA's market recognition.

The arbitrary nature of the mark, combined with Plaintiff's uncontested evidence of continuously using the mark for twenty years in the state of Kentucky, weigh in Plaintiff's favor on this factor.

### 2. *Relatedness of the Services*

Services are "'related' if the services are marketed and consumed such that buyers are likely to believe that the services, similarly marked, come from the same source, or are somehow connected with or sponsored by a common company." *Homeowners*, 931 F.2d at 1109. Therefore, "the question is, are the [services] related so that they are likely to be connected in the mind of a prospective purchaser?" *Id.* (quoting *Fleischmann Distilling Corp. v. Maier Brewing Co.*, 314 F.2d 149, 159 (9th Cir. 1963)).

There is no question that both Plaintiff's and Defendant's restaurants serve casual, Mexican-style cuisine. (DN 26, 2.) While Defendant states that the "parties have different target markets, use different logos, and have completely different products," it does not explain how the parties' target markets, logos, and products are different. Defendant cites to nothing in the record to guide the court's analysis on this assertion. The court therefore finds that the services of the parties are sufficiently related as to cause buyers to believe the parties' services are somehow connected.

### 3. *Similarity of the Marks*

"Similarity of marks is a factor of considerable weight." *Daddy's*, 109 F.3d at 183. A side-by-side comparison of the marks is not adequate. Courts should "account for the possibility

undisclosed third-party users. The court cannot conclude, based on Defendant's unsupported assertion, that there exist third-party users of the mark that weaken LA BAMBA's market recognition.

The arbitrary nature of the mark, combined with Plaintiff's uncontested evidence of continuously using the mark for twenty years in the state of Kentucky, weigh in Plaintiff's favor on this factor.

### 2. *Relatedness of the Services*

Services are "'related' if the services are marketed and consumed such that buyers are likely to believe that the services, similarly marked, come from the same source, or are somehow connected with or sponsored by a common company." *Homeowners*, 931 F.2d at 1109. Therefore, "the question is, are the [services] related so that they are likely to be connected in the mind of a prospective purchaser?" *Id.* (quoting *Fleischmann Distilling Corp. v. Maier Brewing Co.*, 314 F.2d 149, 159 (9th Cir. 1963)).

There is no question that both Plaintiff's and Defendant's restaurants serve casual, Mexican-style cuisine. (DN 26, 2.) While Defendant states that the "parties have different target markets, use different logos, and have completely different products," it does not explain how the parties' target markets, logos, and products are different. Defendant cites to nothing in the record to guide the court's analysis on this assertion. The court therefore finds that the services of the parties are sufficiently related as to cause buyers to believe the parties' services are somehow connected.

### 3. *Similarity of the Marks*

"Similarity of marks is a factor of considerable weight." *Daddy's*, 109 F.3d at 183. A side-by-side comparison of the marks is not adequate. Courts should "account for the possibility

that sufficiently similar marks may confuse consumers who do not have both marks before them but who have a general, vague, or even hazy, impression or recollection" of the other mark. *Id.* (internal citations omitted).

The court acknowledges that the parties' marks are not identical; the name "La Bamba Authentic Mexican Cuisine" certainly is longer and more descriptive than Plaintiff's LA BAMBA mark. The court further acknowledges that "it is the overall impression of the mark, not an individual feature, that counts." *Homeowners*, 931 F.2d 1109. Therefore, this court may not conclude that the parties' marks are essentially the same from the fact that they contain the same words.

Nevertheless, comparing the marks in their entirety, the court finds that consumers with only a "general, vague, or even hazy" recollection of Plaintiff's mark could easily confuse the marks. Potential consumers familiar with Plaintiff's La Bamba restaurant, which holds itself out as serving casual, Mexican-style cuisine, likely could believe that La Bamba Authentic Mexican Cuisine is connected to or affiliated with the Plaintiff's restaurant. Defendant's restaurant's name is merely Plaintiff's arbitrary mark accompanied by a description of the same style of food that Plaintiff offers to consumers. The evidence weighs in Plaintiff's favor on this factor.

### 4. *Evidence of Actual Confusion*

Courts agree that evidence of actual confusion is "undoubtedly the best evidence of likelihood of confusion." *Daddy's*, 109 F.3d at 284. Evidence of a significant amount of confusion is entitled to more weight than only sporadic or isolated confusion. *See Therma-Scan*, 295 F.3d at 634.

Plaintiff, by affidavit, submits the following evidence as support for actual confusion: that "[e]mployees of the Louisville Restaurant have reported numerous questions and comments

from visitors to the Louisville Restaurant who have inquired about [Defendant's restaurant] and its connection to our LA BAMBA chain of restaurants;" that "customers have questioned why they could not purchase the same food at [Defendant's restaurant]" and "indicated that they felt confused or ripped off by their experience at [Defendant's restaurant];" that customers have "shown up to pick up orders at the Louisville Restaurant that were placed with [Defendant's Restaurant];" and that "these sorts of questions, comments, and occurrences relating to [Defendant's restaurant] are happening regularly and at all shifts at the Louisville Restaurant." (DN 27, Exh. A, ¶¶ 26-28.) Defendant does not offer any evidence rebutting this affidavit.

Because Plaintiff does not provide specific evidence indicating how often these complaints or questions occur, it cannot definitively be stated that "chronic mistakes and serious confusion" between the parties' restaurants has occurred. *See Therma-Scan*, 295 F. 3d at 634 (citation omitted). The court *can* find, however, that actual confusion has indeed occurred. And since "a successful Lanham Act plaintiff only must show a sufficient potential of confusion, not actual confusion, the fact that some confusion already has occurred favors plaintiff at least to some extent." *Id*. (quoting *Daddy's*, 109 F.3d at 284). As such, the evidence indicating actual confusion weighs in Plaintiff's favor.

### 5. *Marketing Channels Used*

The fifth "Frisch's" factor "requires an analysis of the parties' predominant customers and their marketing approaches." *Id*. at 636. "Where the parties have different customers and market their goods or services in different ways, the likelihood of confusion decreases." *Id*. This factor is significant when it illuminates what actually happens in the marketplace. *See Homeowners*, 931 F.2d at 1110.

There are some similarities in the parties' predominant customers. First, both parties serve and advertise to individual consumers of casual, Mexican-style food. (DN 27, Exh. A, ¶ 9; DN 26, 2.) *See, e.g., Therma-Scan*, 295 F.3d at 637 (noting that the predominant customers differed when one party sold to commercial buyers and the other party sold to individual consumers). Additionally, Plaintiff has provided evidence that there is *some* overlap in customers through testimony that actual confusion has occurred. (DN 27, Exh. A, ¶¶ 26-28.) Also significant is the fact that Plaintiff's Louisville restaurant and Defendant's restaurant are both located in the same state. Further, Defendant does not dispute the testimony offered by Plaintiff that customers from all over Kentucky visit the Louisville restaurant. (*Id*. at ¶ 3.) Still, the evidence provided by Plaintiff on this issue is too general to make a determination on how much overlap exists between the parties' customers.

Courts also consider how the parties market their services. In response to Plaintiff's interrogatory, Defendant alleged that it advertises and promotes its services through its Facebook page, through a coupon in a Lebanon, Kentucky grocery, and through a coupon in a Lebanon, Kentucky newspaper. (DN 23, 3.) Plaintiff alleges that it similarly promotes its services on its website, on Facebook, and through "coupon and grocery store advertisements," which Defendant does not dispute. (DN 27, Exh. A, ¶ 10.) Yet these general facts do not particularly "illuminate what actually happens in the marketplace." *Homeowners*, 931 F.2d at 1110. For example, neither party provided evidence on marketing budgets, frequency of advertising, or sophistication of advertising. Additionally, the mere fact that both parties use Facebook and the Internet is not sufficient. *See Therma-Scan*, 295 F.3d at 637 (quoting *Entrepreneur Media, Inc. v. Smith*, 279 F.3d 1135, 1151 (9th Cir. 2002)) ("Use of the Internet for marketing… does not alone and as a matter of law constitute overlapping marketing channels."). Once again, the

evidence is too general to conclude whether the parties' marketing approaches create a likelihood of confusion.

Despite the limited and general nature of the evidence offered by Plaintiff, Defendant has not pointed to any facts in the record indicating that the parties market their services in different ways or to different customers. Because Defendant has not provided evidence showing that this factor disfavors Plaintiff or evidence establishing that a genuine issue of material fact exists, the court finds that this factor is neutral.

### 6. *Likely degree of Purchaser Care*

"[I]n assessing the likelihood of confusion to the public, the standard used by the courts is the typical buyer exercising ordinary caution." *Homeowners*, 931 F.2d at 1111. A higher standard is generally appropriate when a buyer has expertise in the products or services, or when the products or services are expensive or unusual. *Id*. *See also Eat BBQ*, 47 F. Supp.3d at 531 ("Where the product at issue is relatively cheap, it may be assumed that consumers are less likely to employ significant care in making the purchase.").

The Court in *Frisch's* found that "[t]he 'fast-food' products promoted by [the defendant] are not likely to be the object of intensive consumer research, but rather subject to 'impulse buying.'" 670 F.2d at 648. As both parties have admitted to serving relatively "casual" food, the court finds that the likely degree of purchaser care in selecting the parties' services is ordinary caution. The facts are in Plaintiff's favor on this issue.

### 7. *Defendant's Intent in Selecting the Mark*

"If a party chooses a mark with the intent of causing confusion, that fact alone may be sufficient to justify an inference of confusing similarity." *Homeowners*, 931 F.2d at 1111. On the other hand, this factor "does not carry significant weight if no evidence of intentional

infringement exists." *Therma-Scan*, 295 F.3d at 639; *See also Daddy's*, 109 F.3d at 287 (holding that "lack of intent neither reduces nor increases the probability of consumer confusion").

Defendant has testified that it was not aware of Plaintiff's trademark and its use in connection with Plaintiff's restaurant until Defendant received Plaintiff's May 10, 2016 letter informing it of Plaintiff's rights in the LA BAMBA mark. (DN 23, 3.) On Plaintiff's summary judgment motion, the court must accept this as true. The court finds that Defendant did not choose the mark intending to create confusion and therefore this factor is not relevant in determining likelihood of confusion.

### 8. *Likelihood of Expansion of the Product Lines*

The last of the "Frisch's" factors looks to whether there exists a "strong" possibility "that either party will expand [its] business to compete with the other or be marketed to the same consumers." *Daddy's*, 109 F.3d at 287. Just as with the seventh factor, "an affirmative finding will provide a strong indication that the parties' simultaneous use of the marks is likely to lead to confusion, while a negative finding is *not* a strong indication to the contrary." *Id*. (internal citations omitted) (emphasis in original).

Plaintiff does not argue that Defendant seeks to expand its business at this time. However, Plaintiff does contend that there is a strong possibility that Plaintiff will expand its restaurants into new geographic locations. Plaintiff alleges that it currently operates numerous restaurants, has previously operated restaurants in five other states, and that it is currently offering franchise opportunities. (DN 27, Exh. A, ¶¶ 7-17.) However, these facts only indicate the mere possibility that Plaintiff could open another restaurant in close proximity to Defendant. Plaintiff has not alleged any specific plans to expand and only states that "if the right location was located, Plaintiff would potentially open another restaurant that is even closer to

[Defendant]." (DN 27, 16.) Because the evidence does not show that the possibility of Plaintiff expanding near Defendant's restaurant is "strong," the last "Frisch's" factor is not relevant.

### C. The Likelihood of Confusion

The preceding discussion on the eight "Frisch's" factors indicates that there is no genuine dispute of material fact. Defendant has not cited to any evidence in the record to rebut the facts offered by Plaintiff on this motion and discovery is closed.[6] Therefore, it is appropriate for the court to determine, as a matter of law, whether Plaintiff has established a likelihood of confusion. *See Therma-Scan*, 295 F.3d at 641 (citing *Homeowners*, 931 F.2d at 1107) ("The dispute in the present case is not over the underlying facts, but over the legal question of whether this 'given set of foundational facts establishes a likelihood of confusion.'").

The court finds that there exists a likelihood of confusion between the services offered by Plaintiff and Defendant. The first four factors provide the strongest support for Plaintiff's position: the LA BAMBA mark is arbitrary and has been used in Kentucky for more than twenty years; both parties use the mark in connection with casual, Mexican-style cuisine; the parties' marks are sufficiently similar as to confuse a consumer with only a vague recollection of Plaintiff's mark; and, perhaps most significantly, actual confusion between Plaintiff's and Defendant's services has already occurred. The remaining factors either favor Plaintiff or are irrelevant or neutral. Together, the foundational facts in this case establish a likelihood of confusion and summary judgment is proper on Plaintiff's claims.

---

[6] In order to create a genuine dispute of material fact under Fed.R.Civ.P. 56, the nonmoving party must "direct the court's attention to those specific portions of the record upon which it seeks to rely." *In re Morris*, 260 F.3d at 655.

**D. Relief**

Plaintiff has requested a permanent injunction.[7] Section 35 of the Lanham Act permits a court to grant a permanent injunction "according to principles of equity and upon such terms as the court may deem reasonable, to prevent the violation of any right" of the trademark holder. 15 U.S.C. § 1116(a). Injunctive relief is the Sixth Circuit's preferred remedy for trademark and unfair competition cases. *Audi AG v. D'Amato*, 469 F.3d 534, 550-51 (6th Cir. 2006) (quoting *Century 21 Real Estate Corp. v. Sandlin*, 846 F.2d 1175, 1180 (9th Cir.1988) ("Injunctive relief is the remedy of choice for trademark and unfair competition cases, since there is no adequate remedy at law for the injury caused by a defendant's continuing infringement.")).

A permanent injunction preventing Defendant from using the LA BAMBA mark would preclude further consumer confusion and stop customers from being "misled in the future." *Maker's*, 703 F. Supp.2d at 700-01, aff'd, 679 F.3d 410 (6th Cir. 2012). Further, in considering the balance of hardships between the parties, Defendant has only one location which was established in 2015; conversely, Plaintiff has operated in various states under the LA BAMBA mark for nearly thirty years. Plaintiff therefore maintains a great interest in protecting its mark. These findings, together, indicate that a permanent injunction preventing Defendant's further use of the LA BAMBA mark is appropriate.

---

[7] Plaintiff has also requested damages. The issue of damages, not being fully briefed at this time, will be reserved.

IV.     CONCLUSION

For the reasons stated, the court will **GRANT** the motion of Plaintiff La Bamba Licensing, LLC for summary judgment. The court will permanently enjoin Defendant La Bamba Authentic Mexican Cuisine, Inc. from using the LA BAMBA mark in connection with its services.

An order will be entered in accordance with this opinion.

January 8, 2018

**Charles R. Simpson III, Senior Judge**
**United States District Court**